TYSON, Judge.
In 1981, Frank Hicks, Jr., was tried and convicted for rape. He was sentenced to life imprisonment without possibility of parole as a habitual felony offender.
During the sentencing phase at the rape conviction, four prior felonies were admitted for enhancement purposes. One was a conviction for buying, receiving, and concealing stolen property (BRCSP) in 1981. The other three were convictions for grand larceny of three automobiles. As for these latter three, the appellant pleaded guilty to each as part of a plea agreement on May 15, 1978.
The appellant filed four separate Rule 20 petitions, challenging the 1981 BRCSP conviction and the three 1978 convictions. The trial court denied all four petitions.
The appellant now appeals the trial court’s ruling, but he only seeks to chai- *347 lenge the ruling as to the three 1978 felony-convictions for grand larceny.
I
The appellant’s first contention is in three parts: (a) that he was denied effective assistance of counsel; (b) that he was not adequately apprised of his constitutional rights and thus unknowingly and unin-telligently pleaded guilty to the three charges; and (c) that he was not informed that he could appeal either his guilty pleas or the denial of his youthful offender status.
According to Rule 20.3, A.R.Cr.P. (Temp.), the appellant must prove by “a preponderance of the evidence” that he is entitled to relief. Our review of the record reveals that the appellant has failed to meet his burden in this cause. The evidence he offered in the trial court was speculative, at best.
The appellant’s attorney on the three felony charges in 1978 was Frank Buck of Birmingham, Alabama. Buck testified at the Rule 20 hearing in the trial court, but he admitted that his memory of this case was clouded, since he had represented the appellant almost eleven years prior to the filing of these petitions.
Buck testified that he was contacted by the appellant’s mother to represent the appellant. Buck stated that he spoke with some police officers and the district attorney’s office about the cases pending against the appellant. He recalled that neither office was very agreeable to compromise. Buck was told that the appellant had a long history of criminal violations and that they wished to put him away for a long time.
On November 4, 1977, pursuant to the request of the district attorney’s office, the Honorable G. Ross Bell, family court judge, denied the appellant youthful offender status and transferred him to the circuit court of Jefferson County, Alabama. In reaching this decision, the judge heard the testimony of several persons, including this appellant. Judge Bell made the following findings:
“The Court having further reviewed the records and exhibits admitted into evidence, including the orders of this court, finds that said child has been referred to this court on twenty-seven (27) occasions since 1973; that he has been placed on probation in twelve (12) different cases; that he has had a suspended commitment on two (2) occasions; that he was committed to the Department of Youth Services in seven (7) cases and is presently under a Consent Decree; that he has been placed at the Chalkville, Roebuck and Mt. Meigs campuses; that he made several escapes and committed other offenses while in their custody and he was in violation of the Consent Decree before this petition was filed; that he has been evaluated at the Jefferson County Mental Health Clinic, the Smolian Clinic, and the Eufaula Adolescent Adjustment Center, and also received a psychological evaluation while at the Department of Youth Services; each evaluation revealed that he was above average intelligence and there is no evidence of psychological disorder; that no institution of the Department of Youth Services has been able to control the behavior of said child and said Department has nothing left to offer said child in the way of a rehabilitation or treatment program; that psychiatrists have reported that he is not psychotic or brain damaged and therefore, is not committable to an institution or agency for the mentally retarded or mentally ill; that the State has established probable cause by sufficient evidence to show that said child did felo-niously take and carry away one 1973 Honda 350 motorcycle of the approximate value of $500.00, the personal property of Joe W. Myers, 601 Pratt Highway, or did aid and abet in said act; that the best interest of the child and the public would be to grant the Motion to Transfer....”
(R. 189-90). The appellant was fifteen years old at the time of this order. He was sixteen when he pleaded guilty to the grand larceny charges.
Buck further testified that it was his opinion that appealing the denial of the *348 youthful offender status would be “of no avail.” Instead, he chose to pursue the cases to obtain the least severe sentence for the appellant.
Through a plea agreement with the district attorney’s office, the appellant was to plead guilty to three grand larceny charges pending in the Birmingham division and one grand larceny charge pending in the Bessemer division of the Jefferson County Circuit Court. In exchange, the appellant was to receive four concurrent five-year sentences, and the district attorney’s office would not prosecute him on two other pending felony charges.
Buck testified that he explained the situation to the appellant and that the appellant chose to plead guilty. The appellant then signed a plea agreement, which included a statement of his rights. Buck stated that he explained these rights to the appellant, which included, inter alia, his right to be tried by a jury and his right to plead not guilty. Buck stated that the appellant was competent and conversant, seemed to understand his rights, and signed the agreement of his own free will and accord.
Buck told the appellant and his mother that the State had a strong case against the appellant and suggested that the appellant plead guilty. The appellant obviously accepted this advice, with his mother present, and pleaded guilty to the three felony charges on May 15, 1978, which convictions he now challenges.
The appellant’s mother, Mary Hicks, also testified at the hearing. She stated that Buck failed to explain all the options to her or her son, including the fact that the denial of youthful offender status could be challenged on appeal. She testified that her son had been evaluated for mental and emotional problems and admitted that he was determined to be “above average intelligence.” She, however, claimed that the appellant had a family history of mental problems and suggested that had the family court judge heard this information, he might have agreed not to certify the appellant as an adult.
Mary Hicks also testified that she remembered the trial judge’s explaining to the appellant at the plea hearing in 1978 his constitutional rights. She also remembered the appellant being asked if he was voluntarily pleading guilty. She also remembered the appellant’s acknowledging the three prior convictions at sentencing for his 1981 charge of BRCSP.
The appellant also took the stand at the Rule 20 hearing. He stated that he remembered talking with Buck on two or three occasions and at the different hearings. He recalled Buck’s telling him about the plea agreement and informing him that he could opt to go to trial. However, he stated that Buck suggested that he plead guilty, and he only did what his attorney told him. He finally stated that the trial judge at the plea hearing in 1978 explained his rights to him, but he was not sure that he understood them. He did understand, though, that he could choose not to plead guilty and to proceed to a jury trial. Nonetheless, he pleaded guilty to the three that he now seeks to collaterally attack.
As for the appellant’s claim that he received ineffective assistance of counsel, he has wholly failed to prove that Buck’s representation “fell below an objective standard of reasonableness,” the first of the two-prong test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The crux of the appellant’s allegation that Buck failed to do an adequate investigation to present to the family court judge to attempt to avoid the transfer to the criminal court is, at most, speculative. The appellant claims that his family history of mental problems “might” have influenced the family court judge to try the appellant as a juvenile.
We find no merit to this argument, since the transfer order mentions three mental examinations of this appellant. All three examinations revealed that the appellant was competent, sane, and of above-average intelligence. Furthermore, there is no indication that the appellant or his mother told Buck of the family history of mental problems. See Hall v. State, 521 So.2d 1373, 1377 (Ala.Cr.App.1988) (Strickland requires a reasonable investigation or a reasonable decision that such investigations *349 are unnecessary); Horsley v. State, 527 So.2d 1355 (Ala.Cr.App.), cert. denied, 489 U.S. 1059, 109 S.Ct. 1328, 103 L.Ed.2d 596 (1989) (failure of defense counsel to discover childhood mental problems of appellant until day of sentencing not ineffective assistance of counsel).
The appellant’s claim that he unknowingly and unintelligently pleaded guilty because he was not fully apprised of his rights must likewise fail. Both his attorney and the trial judge explained his rights to him, which he acknowledged that he understood, orally and by his signature. We find that this appellant was adequately apprised of his rights in accord with Ireland v. State, 47 Ala.App. 65, 250 So.2d 602 (1971), and Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). See also Roberson v. State, 441 So.2d 1067 (Ala.Cr.App.1983) (appellant advised of constitutional rights before guilty plea).
Further, the appellant argues as a separate sub-issue that his counsel failed to inform him that he could appeal his guilty convictions or his denial of youthful offender status. This claim must fail for the same reason it did in McDaniel v. State, 526 So.2d 895 (Ala.Cr.App.1987). As in McDaniel, the appellant in the cause sub judice was informed of his right to appeal; however, the record fails to reveal that the appellant ever asserted this right. See Ex parte Dunn, 514 So.2d 1300 (Ala.1987); Langford v. State, 531 So.2d 944 (Ala.Cr.App.1988) (failure to inform of right to appeal guilty plea not ineffective assistance of counsel).
Moreover, we note that the trial judge in this case opined that this cause should be procedurally barred on the merits of Young v. State, 516 So.2d 858 (Ala.Cr.App.), cert. denied (Ala.1987). We choose, however, to address the merits of the appellant’s allegations. In so doing, we find that the appellant is not due to prevail on these claims.
II
The appellant lastly contends that the State failed to show proof of a statutory hearing and investigation before transferring this appellant to the criminal court. Ala.Code §§ 12-15-34 and 15-19-1 (1975). As a result, the appellant argues that he was denied his right to due process and equal protection.
While the record does reveal some discussion about the absence of an investigation and hearing by the family court, the appellant failed to argue at trial, as he now does on appeal, that his transfer to criminal court and subsequent guilty pleas should be set aside because of the alleged failure to provide a hearing or an investigation. The petition, while it does assert due process and equal protection grounds, fails to mention the noncompliance with the statutes cited in his brief. As a result, this issue is deemed waived. Boatwright v. State, 494 So.2d 929, 935 (Ala.Cr.App.1986).
Moreover, the trial judge noted that a hearing was held to determine the appellant’s youthful offender status. The family court’s order denying the application for youthful offender status reveals the same. See Watkins v. State, 357 So.2d 156 (Ala.Cr.App.1977), cert. denied, 357 So.2d 161 (Ala.1978).
Therefore, for the reasons stated, the decision of the trial court is due to be, and the same is hereby, affirmed.
AFFIRMED.
All the Judges concur.